IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>PCH HEALTHCARE HOLDINGS, LLC;<br>THE PEOPLE'S CHOICE HOSPITAL, LLC;<br>PCH MANAGEMENT NEWMAN, LLC;<br>PCH LAB SERVICES, LLC; PCH LABS,<br>INC.; SETH GUTERMAN, M.D.; DAVID<br>WANGER; AETNA INC., and AETNA LIFE<br>INSURANCE COMPANY,<br><br>       Defendants. | Case No. 18-cv-2691 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Arch Insurance Company ("Arch"), by and through its attorneys, BatesCarey LLP, and for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1.      This is an insurance coverage dispute. Arch issued a liability insurance policy to PCH Healthcare Holdings, LLC ("PCH") for the **Policy Period**[1] of September 11, 2017 to September 11, 2018 (the "Policy"). The Policy is a "claims made" policy, which means that any **Claim** for coverage under the Policy must be first made against the **Insureds** during the **Policy Period**. Otherwise, the **Insureds** are not entitled to coverage for the **Claim** under the Policy.

---

[1]      Terms in bold are defined in the Arch Policy.

2.      Under the Policy, all **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed a single **Claim** first made on the earliest date that any of such **Claims** was first made.

3.      On October 16, 2017, PCH provided notice of a lawsuit filed by Aetna Inc. and Aetna Life Insurance Company (collectively, "Aetna") alleging that PCH entities and others engaged in a fraudulent health care billing scheme through which they purportedly bilked millions of dollars from Aetna (the "Aetna Lawsuit"). Months before the Aetna Lawsuit was filed, Newman Memorial Hospital filed a lawsuit against the same PCH entities relating to the same alleged fraudulent billing scheme (the "Newman Lawsuit").

4.      The Aetna Lawsuit and the Newman Lawsuit constitute a single **Claim** first made before, not during, the **Policy Period** of the Arch Policy. Therefore, Arch owes no coverage for the **Claim** under the Policy.

5.      In addition, PCH had knowledge of the **Claim** and the alleged fraudulent billing scheme before purchasing the Policy from Arch, but failed to disclose this information in the application and warranty letter submitted to Arch in connection with its purchase of the Policy. For this independent reason, the Policy affords no coverage for the **Claim**.

6.      Other terms and conditions of the Arch Policy also bar or limit coverage for the **Claim**, including, but not limited to, exclusions in the Policy for pending and prior litigation, **Claims** arising out of **Healthcare Services**, and **Claims** arising from any liability under any contract or agreement.

7.      For these independent reasons, Arch seeks a declaration that it owes no defense or indemnity coverage for the **Claim** under the Policy.

## THE PARTIES

### Plaintiff

8.      Arch is a corporation organized under the laws of Missouri with its principal place of business located in New Jersey.

### PCH Defendants

9.      PCH is a Delaware limited liability company with its principal place of business located in Oak Brook, Illinois.  Seth Guterman is the sole member of PCH.

10.      People's Choice Hospital, LLC ("People's Choice"), is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.   Seth Guterman is the sole member of People's Choice.

11.      PCH Management Newman, LLC ("PCH Management"), is an Oklahoma limited liability company with its principal place of business in Oak Brook, Illinois.  PCH Management is wholly owned by PCH Management Services, LLC, which, on information and belief, is an Illinois limited liability company that is wholly owned by PCH and has its principal place of business in Illinois.

12.      PCH Lab Services, LLC ("PCH Lab Services"), is an Illinois limited liability company with its principal place of business in Oak Brook, Illinois.  PCH Lab Services is wholly owned by PCH Consulting Services, LLC, which, on information and belief, is an Illinois limited liability company that is wholly owned by PCH and has its principal place of business in Illinois.

13.      PCH Labs, Inc. ("PCH Labs"), is a Delaware corporation with its principal place of business located in Delaware.

3

14.    Seth Guterman, M.D. ("Guterman"), is an individual domiciled in Illinois and serves as the President of PCH and People's Choice.

15.    David Wanger ("Wanger") is an individual domiciled in Arizona. On information and belief, Wanger was an independent contractor for People's Choice and, at times relevant herein, served as the interim CEO of Newman Memorial Hospital.

16.    PCH, People's Choice, PCH Management, PCH Lab Services, PCH Labs, Guterman, and Wanger are collectively referred to herein as the "PCH Defendants."[2]

**Aetna Defendants**

17.    Aetna Inc. ("Aetna") is a Pennsylvania corporation with its principal place of business in Connecticut. Aetna provides health insurance and administrative services for self-funded medical benefits plans throughout the United States.

18.    Aetna Life Insurance Company ("ALIC"), an Aetna affiliate, is a healthcare insurer organized under the laws of Connecticut with its principal place of business in Connecticut. ALIC provides health insurance and administrative services for self-funded medical benefits plans throughout the United States.

**JURISDICTION AND VENUE**

19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as Arch seeks a declaration of the parties' rights and obligations under the Arch Policy. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity exists between the

---

[2]    On information and belief, PCH, People's Choice, PCH Management, PCH Lab Services, PCH Labs, and Guterman are **Insureds** under the Arch Policy. Arch reserves its rights as to whether Wanger is an **Insured**. Arch further reserves its right to amend this Complaint to the extent that it is determined that any of the PCH Defendants are not **Insureds**.

parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

20.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that Defendant PCH is a resident within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District.

## THE ARCH POLICY

21.     Arch issued the Policy (Private Company Management Liability & Crime Insurance Policy No. PCD10000532-00) to PCH for the **Policy Period** of September 11, 2017 to September 11, 2018.  The Policy contains a Directors, Officers, & Organization Liability Coverage Part (the "D&O Part"), which provides a Limit of Liability of $5 million, subject to a $10,000 Deductible for each **Claim** under Insuring Agreements B and C.  A true and correct copy of the Policy is attached as Exhibit 1.

22.     The Insuring Agreements set forth in Section I.B. and I.C. of the D&O Part of the Policy state as follows:

B.     **Organization Reimbursement**

The **Insurer** shall pay **Loss** on behalf of an **Insured Organization** that such **Insured Organization** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons.**

C.     **Organization Liability**

The **Insurer** shall pay **Loss** on behalf of an **Insured Organization** resulting from a **Claim** first made against such **Insured Organization** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Organization**.

23. Section II.A. of the D&O Part, as amended by Endorsement 5, defines **Claim** to mean any:

1. written demand or notice for civil monetary damages or other civil non-monetary relief commenced by the **Insured's** receipt of such demand or notice;

2. civil proceeding, including but not limited to any arbitration proceeding or other alternative dispute resolution (ADR) proceeding, commenced by the service upon the **Insured** of a complaint, demand for arbitration, or similar pleading;

3. a criminal proceeding by the return of an indictment, information, or similar document;

4. formal civil, criminal administrative, or regulatory proceeding commenced by the filing of a notice of charges or similar document, or by the entry of a formal order of investigation or similar document;

5. solely for the purposes of Insuring Agreement D, any **Derivative Demand**;

6. written request to an **Insured** to toll or waive the statute of limitations regarding a potential **Claim** as described in 1 and 2 above commenced by the **Insured's** receipt of such request; or

7. civil, criminal, administrative, or regulatory investigation of any **Insured Person** once such **Insured Person** is identified by name in a Wells Notice, subpoena or target letter by such investigation authority as a person against who a proceeding described in 2, 3 or 4 above may be commenced.

24. Section 10. of the General Provisions of the Policy, as amended by Endorsement 1, provides:

Regarding the **Liability Coverage Parts** only, all **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

A. any of such **Claims** was first made, even if such date is before the **Policy Period**;

B.     proper notice of such **Wrongful Act** or **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section 9.B. above; or

C.     notice of such **Wrongful Act** or **Interrelated Wrongful Act** was given under any other directors and officers liability, employment practices liability, fiduciary liability, management liability or similar insurance policy.

25.     Section 2.L. of the D&O Part of the Policy, as amended by Endorsement 5, defines **Wrongful Act**, in part, as any actual or alleged "act, error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** in their capacity as such or in an **Outside Capacity** or, with respect to Insuring Agreement C, by an **Insured Organization**."

26.     Section 2.N. of the General Provisions of the Policy defines **Interrelated Wrongful Acts** as "**Wrongful Acts** that have as a common nexus any fact, circumstance, situations, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

### THE LAWSUIT REPORTED FOR COVERAGE

27.     On September 29, 2017, Aetna filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against the PCH Defendants and others. A true and correct copy of the Complaint filed in the Aetna Lawsuit is attached as Exhibit 2. In the Complaint, Aetna claims that the defendants "engaged in an extensive health care billing fraud scheme through which they bilked Aetna, employers that sponsor health plans, and Aetna members out of more than $21 million." (Ex. 2, ¶ 1.)

28.     Aetna alleges that, in 2016, the PCH Defendants gained control of Newman Memorial Hospital ("Newman"), a financially vulnerable rural hospital in Oklahoma, by

convincing Newman to sign a management agreement with People's Choice and PCH Management. (Ex. 2, ¶ 31.)

29. Aetna further alleges that, upon gaining control of Newman, People's Choice and PCH Management caused Newman to enter into agreements with PCH Lab Services, PCH Labs, and other independent laboratories to defraud Aetna and employers and employees whose plans Aetna administers. (Ex. 2, ¶ 32.)

30. According to Aetna, the PCH Defendants paid and induced physicians to send urine and blood specimens to the independent laboratories for testing and processing. Although the specimens were sent to the laboratories, the PCH Defendants submitted claim forms to Aetna indicating that the specimens were tested at Newman, which had a contract with Aetna that provided for higher reimbursement rates than what Aetna typically paid for claims submitted directly by the laboratories. (Ex. 2, ¶ 34-35.)

31. Aetna alleges that the PCH Defendants "reaped millions of dollars in ill-gotten gains by repeating this process thousands of times at Newman and at other Aetna-affiliated facilities through the country." In each instance, the PCH Defendants submitted claim forms to Aetna that misrepresented that the services were performed at Newman, even though the PCH Defendants knew that was not the case. (Ex. 2, ¶ 37.)

32. In addition to the alleged fraudulent billing practices, Aetna claims that Guterman and Wanger made blatant misrepresentations to Aetna designed to mask and cover-up the billing scheme. In correspondence dated September 26, 2016 and April 4, 2017, and in response to Aetna's inquiries, the PCH Defendants purportedly denied submitting claim forms for services performed at Newman that were actually performed by independent laboratories. According to

Aetna, however, Newman representatives have since admitted that the prior correspondence was "deceptive and contained lies." (Ex. 2, ¶¶ 41, 131-137.)

33.     Aetna claims that "in reliance on Defendants' many fraudulent misrepresentations that the lab services billed for were performed and processed by and at Newman, Aetna remitted more than $21 million to Newman during the period when the hospital was under the PCH Defendants' control." (Ex. 2, ¶ 43.)

34.     In the Aetna Lawsuit, Aetna asserts three civil RICO claims (Ex. 2, ¶¶ 144-174), as well as causes of action for fraud (Ex. 2, ¶¶ 175-182), negligent misrepresentation (Ex. 2, ¶¶ 183-188), money had and received (Ex. 2, ¶¶ 189-191), unjust enrichment (Ex. 2, ¶¶ 192-197), civil conspiracy (Ex. 2, ¶¶ 198-200), tortious interference (Ex. 2, ¶¶ 201-212), permanent injunctive relief (Ex. 2, ¶¶ 213-219), and an equitable accounting (Ex. 2, ¶¶ 220-223).

35.     Aetna seeks actual damages, treble damages, injunctive relief, an equitable accounting, costs, and attorneys' fees.

36.     PCH provided notice of the Aetna Lawsuit to Arch on October 16, 2017.

## THE PRIOR LITIGATION

37.     On June 30, 2017, before the Policy incepted, Shattuck Hospital Authority and Newman (collectively, "Newman") filed a Petition in the District Court of Ellis County, Oklahoma, against PCH Management, PCH Lab Services, PCH Labs, and others. Newman subsequently filed an Amended Petition on July 26, 2017, and a Second Amended Petition, the operative petition, on August 7, 2017, to add additional defendants. A true and correct copy of the Second Amended Petition filed in the Newman Lawsuit is attached as Exhibit 3.

38.     Newman served the PCH Defendants with the Second Amended Petition on August 7, 2017.

39.     In the Newman Lawsuit, Newman alleges that, in May 2016, it was on the brink of closure and actively sought management companies that could offer a solution.  (Ex. 3, ¶ 17.)

40.     Newman claims that People's Choice "presented itself to Newman as [the] white knight who would save the hospital and set it on a course for success."  (Ex. 3, ¶ 23.)

41.     On May 19, 2016, Newman and People's Choice allegedly entered into a Hospital Management Agreement, amended on August 31, 2016 (the "Hospital Agreement"), pursuant to which People's Choice agreed to provide healthcare management and other services for a management fee of five percent (5%) of gross hospital collections less recoupments or reimbursements to payer.  (Ex. 3, ¶ 26.)

42.     On May 19, 2016, Newman and People's Choice also entered into a Laboratory Management Agreement, amended on August 31, 2016, with PCH Lab Services for the purpose of growing the overall revenue of Newman with the addition of a reference laboratory program (the "Lab Program") and to provide management services for the Lab Program for a daily fee of 30% of any and all fees collected by Newman for the Program less any payer recoupments and patient refunds.  (Ex. 3, ¶ 32.)

43.     On April 27, 2017, Newman allegedly sent notice to People's Choice of default under the Hospital Agreement.  Newman claimed, among other things, that the defendants submitted claims to private payors, including Aetna, under Newman's national provider identifier number for laboratory tests in violation of Newman's provider agreements with payors. (Ex. 3, ¶ 51.)

44.     Newman alleges that, after certain outside laboratories submitted their claims to private payors, the private payors would pay Newman the entire balance of the claims submitted.

Then, at the direction of People's Choice, Newman would retain 5%, wire the PCH Defendants 25%, and wire the laboratories the remaining 70%. (Ex. 3, ¶ 52.)

45. Newman claims that the PCH Defendants knew the Lab Program "was not compliant with the necessary regulations and statutes or Newman's contracts with the private insurers." (Ex. 3, ¶ 74.)

46. In its Second Amended Petition, Newman asserts causes of action for declaratory judgment (Ex. 3, ¶¶ 63-69; 90-110; 142-146), fraud in the inducement (Ex. 3, ¶¶ 70-76), fraud (Ex. 3, ¶¶ 77-81), conspiracy (Ex. 3, ¶¶ 82-83), tortious interference with existing contracts (Ex. 3, ¶¶ 84-89), breach of contract (Ex. 3, ¶¶ 111-118; 126-135), breach of fiduciary duty (Ex. 3, ¶¶ 119-125), cease and desist (Ex. 3, ¶¶ 136-141), an accounting (Ex. 3, ¶¶ 147-150), and fraudulent transfers (Ex. 3, ¶¶ 151-152).

47. Newman seeks declaratory relief, compensatory damages, punitive damages, costs, and attorney's fees.

## INSURANCE COVERAGE DISPUTE

48. The PCH Defendants seek insurance coverage from Arch under the Policy for the Aetna Lawsuit.

49. Arch disputes that coverage exists for the Aetna Lawsuit under the Policy.

50. An actual, present, and bona fide controversy exists between Arch and the PCH Defendants with respect to whether there is insurance coverage for the Aetna Lawsuit under the Policy.

51. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

## COUNT I – DECLARATORY JUDGMENT
### (The Claim Was First Made Before the Policy Period)

52.     Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 51 as though set forth fully herein.

53.     Subject to its terms, conditions, and exclusions, the Policy provides coverage for **Claims** first made against an **Insured Organization** or **Insured Persons** during the **Policy Period** of September 11, 2017.

54.     Under the Policy, all **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed a single **Claim** first made on the earliest date that any of such **Claims** was first made.

55.     The Aetna Lawsuit and the Newman Lawsuit arise from, are based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts**, as both lawsuits include allegations and assert causes of actions relating to the same fraudulent medical billing scheme.  As such, the Aetna Lawsuit and the Newman Lawsuit shall be deemed a single **Claim** first made on the earliest date that either lawsuit was filed.

56.     The Newman Lawsuit was first filed on June 30, 2017, and the operative petition, the Second Amended Petition, was filed and served on the PCH Defendants on August 7, 2017.

57.     The Aetna Lawsuit and the Newman Lawsuit constitute a single **Claim** first made on the date the PCH Defendants were served with the Second Amended Petition, which was August 7, 2017, prior to the **Policy Period** of the Arch Policy.[3]

---

[3]     Aetna alleges that it exchanged correspondence with the PCH Defendants concerning the allegedly fraudulent billing practices prior to filing the Aetna Lawsuit.  (*See* ¶ 32 above.)  There is also no coverage to the extent that any of the prior correspondence between Aetna and the PCH Defendants constitutes a **Claim** as defined in the Policy.

58.     Accordingly, there is no coverage for the Aetna Lawsuit under the Policy because the Aetna Lawsuit is not a **Claim** first made during the **Policy Period.**

### COUNT II – DECLARATORY JUDGMENT
### (Misrepresentations in the Application)

59.     Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 58 as though set forth fully herein.

60.     As set forth in Section 15. of the General Provisions of the Policy, as amended by Endorsement 1, Arch issued the Policy in reliance on the material representations contained in the **Application**.  Section 15. states:

> This Policy is issued in reliance upon the material representations contained in the **Application**.  If the **Application** contains material misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the **Insurer**, this Policy shall not afford any coverage for any **Insured** who knew at the inception of the **Policy Period** of the facts that were misrepresented in, or were omitted from, the **Application**.  The **Application** shall be deemed attached to, and incorporated into, this Policy.

61.     In Section 2.A. of the General Provisions of the Policy, as amended by Endorsements 1 and 2, **Application** is defined to include "the application for this Policy, including any information submitted in connection with or incorporated therein."

62.     On August 16, 2017, Guterman, on behalf of PCH, signed an application that was submitted to Arch on August 21, 2017 for the purpose of obtaining insurance (the "**Application**").  A true and correct copy of the Application is attached as Exhibit 4.

63.     Section III.7. of the **Application** contained the following question:

> Other than those identified in response to Question 6, during the past five (5) years, has the **Applicant**, any **Subsidiary** or any person proposed for coverage in his or her capacity as a director, officer, trustee or member of any duly constituted committee of any entity been named as a party in any

civil action or administrative, alternative dispute resolution or investigative proceeding?

If yes, please provide details.

64. Section VIII.2. of the **Application** further asked:

Is the **Applicant** or any individual or entity proposed for coverage aware of any fact, circumstance, situation, transaction, event, act, error or omissions which they have reason to believe may or could reasonably be foreseen to give rise to a claim that may fall within the scope of the proposed insurance?

If yes, please provide details:

65. Below Section VIII.2., the **Application** included the following statement:

NOTE: WITHOUT PREJUDICE TO ANY OTHER RIGHTS OR REMEDIES OF THE UNDERWRITER, IT IS AGREED THAT ANY CLAIM ARISING FROM ANY FACT, CIRCUMSTANCE, SITUATION, TRANSACTION, EVENT, ACT, ERROR OR OMISSION REQUIRED TO BE DISCLOSED IN RESPONSE TO QUESTION 2 IS EXCLUDED FROM THE PROPOSED INSURANCE.

66. In response to these questions, PCH attached a document listing three civil lawsuits that had been filed against People's Choice. PCH did not list or otherwise disclose the Newman Lawsuit to Arch.

67. Prior to submitting the **Application** to Arch, the PCH Defendants were aware of the Newman Lawsuit and had exchanged correspondence with Aetna concerning the allegedly fraudulent health care billing scheme, but failed to disclose such information in the **Application**.

68. Accordingly, because the PCH Defendants failed to disclose material information concerning a pending civil action and/or a fact, circumstance, situation, transaction, event, act, error or omission which the PCH Defendants could reasonably have foreseen would give rise to

a **Claim**, and ultimately did give rise to the Aetna Lawsuit, there is no coverage under the Policy for the Aetna Lawsuit.

## COUNT III – DECLARATORY JUDGMENT
### (Warranty Letter)

69.    Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 68 as though set forth fully herein.

70.    On September 11, 2017, Guterman, on behalf of PCH, sent a letter to Arch representing that "[n]o person or entity for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance that may give rise to a claim under the proposed insurance" (the "Warranty Letter").   A true and correct copy of the Warranty Letter is attached as Exhibit 5.

71.    In the Warranty Letter, PCH also agreed as follows:

It is agreed that any claim for, based upon, arising from, or in any way related to any act, error, omission, fact or circumstance of which any such person or entity has any knowledge or information shall be excluded from coverage under the proposed insurance.

It is also agreed that Arch Insurance Group Inc. and its insurance company subsidiaries are relying upon the above representation and that this letter shall be deemed to be incorporated into any insurance policy issued for the purpose of the proposed letter.

72.    Prior to sending the Warranty Letter, the PCH Defendants and Guterman had knowledge of the Newman Lawsuit and had exchanged correspondence with Aetna concerning the allegedly fraudulent health care billing scheme that is the subject of the Newman Lawsuit, but failed to disclose such information to Arch.

73.    Accordingly, pursuant to the terms of the Warranty Letter, because the Aetna Lawsuit is based upon, arises from, or relates to the same alleged fraudulent health care billing

scheme at issue in the Newman Lawsuit, which the PCH Defendants and Guterman failed to disclose, there is no coverage under the Policy for the Aetna Lawsuit.

## COUNT IV – DECLARATORY JUDGMENT
### (The Pending and Prior Litigation Exclusion Bars Coverage)

74. Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 73 as though set forth fully herein.

75. Section 4.A.2. of the D&O Part of the Policy (the "Pending and Prior Litigation Exclusion"), as amended by Endorsement 5, excludes coverage for any **Claim** arising from, based upon, or attributable to any suit initiated prior to the Pending and Prior Litigation Date or any **Wrongful Act** specified in such prior suit or any **Interrelated Wrongful Acts** thereto. The Pending and Prior Litigation Exclusion states:

> A.     The **Insurer** shall not pay **Loss** for any **Claim** against an **Insured**:
>
> *     *     *
>
> 2.     arising from, based upon, or attributable to any:
>
> > a.     written demand, suit or proceeding made or initiated against an **Insured** within the scope of a Directors and Officers Liability, Employment Practices Liability, Fiduciary Liability, or similar management liability insurance policy (whether covered or not) on or prior to the applicable Pending and Prior Litigation Date in Item 6 of the Declarations; or
> >
> > b.     **Wrongful Act** specified in such prior demand, suit or proceeding or any **Interrelated Wrongful Acts** thereto.

76. The Pending and Prior Litigation Date in Item 6 of the Declarations is September 11, 2017.

77.     The Aetna Lawsuit arises from, is based upon, and is attributable to the same **Wrongful Acts** or **Interrelated Wrongful Acts** specified in the Newman Lawsuit, which was filed on June 30, 2017, prior to the Pending and Prior Litigation Date.

78.     Accordingly, the Pending and Prior Litigation Exclusion bars coverage for the Aetna Lawsuit under the Policy.

### COUNT V – DECLARATORY JUDGMENT
### (The Healthcare Services Exclusion Bars Coverage)

79.     Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 78 as though set forth fully herein.

80.     Endorsement 16 to the Policy amends the D&O Part to add an exclusion for any **Claim** against an **Insured** arising from **Healthcare Services** (the "Healthcare Services Exclusion). The Healthcare Services Exclusion states:

> The **Insurer** shall not pay **Loss** for any **Claim** against an **Insured** arising from, based upon, or attributable to any **Healthcare Services**, provided that this exclusion shall not apply to any:
>
> a.      **Claim** involving the purchase or sale of securities of any **Insured Organization** or any interest in such securities;
>
> b.      **Derivative Demand**; or
>
> c.      **Derivative Suit**.

81.     **Healthcare Services** is defined in Endorsement 16 as follows:

> **"Healthcare Services"** means all healthcare and related services, including, without limitation, any:
>
> a)      medical, surgical, dental, osteopathic, chiropractic, psychiatric, psychological, therapy, pharmaceutical, nursing, or nutrition services;
>
> b)      laboratory, imaging and diagnostic services;
>
> c)      billing for services rendered or products provided; or

      d)     advice given in connection with any of the above.

82.    The Aetna Lawsuit arises out of, is based upon, or is attributable to **Healthcare Services**.  In the Aetna Lawsuit, Aetna alleges that the PCH Defendants engaged in a fraudulent scheme to bill Aetna for laboratory services purportedly performed at Newman, but that were conducted at independent laboratories.

83.    Accordingly, the Healthcare Services Exclusion bars coverage for the Aetna Lawsuit under the Policy.

## COUNT VI – DECLARATORY JUDGMENT
### (The Contract Exclusion Bars Coverage)

84.    Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 83 as though set forth fully herein.

85.    Section 4.B.1. of the D&O Part of the Policy excludes coverage for any **Claim** arising from any liability under a contract (the "Contract Exclusion").  Section 4.B.1. states:

> B.    The **Insurer** shall not pay **Loss** for any **Claim** against an **Insured Organization**:
>
> 1.    arising from, based upon, or attributable to any liability under any contract or agreement; provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement.

86.    The Aetna Lawsuit arises from, is based upon, or is attributable to the PCH Defendants' and Newman's obligations under contracts with Aetna, as well as contracts made with the independent laboratories.

87.    Accordingly, the Contract Exclusion bars coverage for the Aetna Lawsuit under the Policy.

## COUNT VII – DECLARATORY JUDGMENT
### (<u>No Loss</u>)

88.     Arch incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 87 as though set forth fully herein.

89.     Pursuant to the Insuring Agreements of the D&O Part, coverage is only available **Loss** resulting from a **Claim**.

90.     **Loss** is defined in Section 2.I. of the D&O Part, as amended by Endorsement 5, to mean, in relevant part:

> I.     "**Loss**" means damages, settlements, judgments (including awards of plaintiff's legal fees and costs where such fees and costs are awarded pursuant to a covered settlement or judgment), pre/post-judgment interest, and **Defense Costs**.
>
> \*     \*     \*
>
> **Loss** (other than **Defense Costs**) shall exclude any:
>
> 1.     fines or penalties imposed by law, other than:
>
>> a.     pursuant to Section 2(g)2(B) of the Foreign Corrupt Practices Act;
>>
>> b.     civil fines or civil penalties incurred by **Insured Persons** imposed in a jurisdiction outside of the United States of America and where insurable by applicable law;
>>
>> c.     civil fines or civil penalties incurred by **Insured Persons** that all **Insured Organizations** cannot indemnify solely because of **Insolvency** and where insurable by applicable law.
>
> 2.     taxes;
>
> 3.     amount for which the **Insureds** are not liable or for which the claimants are without legal recourse to the **Insureds**;
>
> 4.     non-monetary relief;

5.     amount representing, or substantially equivalent to, an increase in consideration or proposed to be paid in connection with any purchase of securities or assets of an **Insured Organization**.

6.     matters that are uninsurable under the law.

91.     In the Aetna Lawsuit, Aetna alleges that the PCH Defendants "reaped millions of dollars in ill-gotten gains" and seeks disgorgement of those ill-gotten gains.

92.     Disgorgement of ill-gotten gains is uninsurable under the applicable law.

93.     Accordingly, coverage is not available for the Aetna Lawsuit to the extent any **Insured** incurs any amount in connection with the Aetna Lawsuit that falls outside the definition of **Loss**.

WHEREFORE, Plaintiff, Arch Insurance Company, prays that this Court enter a judgment in its favor and against the Defendants, awarding the following relief:

a.     A declaration that Arch has no duty to defend or indemnify the PCH Defendants or any other **Insured** in connection with the Aetna Lawsuit under the Policy;

b.     For costs of suit incurred herein; and

c.     For such other and further relief at law or in equity that the Court deems just and proper.

## RESERVATION OF RIGHTS

The Policies contain terms, conditions, and exclusions that may be relevant to the Aetna Lawsuit but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Arch of any coverage defenses at law, in equity, or under the Policy. Arch continues to reserve all rights with respect to any claim for coverage made under the Policy where appropriate, and waives none.

## **JURY DEMAND**

Arch demands a jury trial.


DATED:       April 13, 2018                  ARCH INSURANCE COMPANY



By:     /s/ Michael T. Skoglund                         
            One of its Attorneys

Ommid C. Farashahi
Michael T. Skoglund
Kristi S. Nolley
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:    312-762-3100
Fax:    312-762-3200

1922922