UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Arch Insurance Company, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PCH Healthcare Holdings, LLC, | ) No. 18 C 02691 |
| The People's Choice Hospital, LLC | ) |
| PCH Management Newman, LLC, | ) Judge Edmond E. Chang |
| PCH Lab Services, LLC, | ) |
| PCH Labs, Inc., | ) |
| Seth Guterman, David Wanger, | ) |
| Aetna, Inc., and | ) |
| Aetna Life Insurance Company, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff in this insurance-coverage dispute, Arch Insurance Company, seeks a declaration that it has no duty to defend the PCH Defendants from a lawsuit brought by the Aetna Defendants.[1]. R. 1, Compl.[2] PCH also filed counterclaims for breach of contract and damages under 215 ILCS 5/155. R. 33, Am. Counterclaim. The parties have now cross-moved for judgment on the pleadings. R. 34, Pl.'s Mot. J.

---

[1]The PCH Defendants are PCH Healthcare Holdings, LLC; The People's Choice Hospital, LLC; PCH Management Newman, LLC; PCH Lab Services, LLC; PCH Labs, Inc.; Seth Guterman; and David Wanger. This Opinion will call them, collectively, PCH unless noted otherwise. The Aetna Defendants are Aetna Inc. and Aetna Life Insurance Company (Aetna).

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332. The parties are completely diverse: Arch Insurance Company is a citizen of Missouri and New Jersey, while the Defendants are citizens of Illinois and Arizona. *See* R. 1, R. 7, R. 9. The amount in controversy alleged exceeds $75,000. R. 1, Compl. ¶ 19.

Pleadings; R. 56, Def.'s Resp. and Cross-Mot. Arch has also moved to dismiss PCH's Counterclaim 2. R. 35, Mot. Dismiss. For the reasons explained below, Arch's motions for judgment on the pleadings and to dismiss are granted, and PCH's motion for judgment on the pleadings is denied.

## I. Background

In deciding each party's motion for judgment on the pleadings, the Court takes all well-pled allegations as true and draws all reasonable inferences in the non-movant's favor. *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). So when the Court evaluates PCH's motion, Arch gets the benefit of reasonable inferences; conversely, when evaluating Arch's motion, the Court gives PCH the benefit of the doubt.

### A. The Underlying Complaint

In September 2017, Aetna filed a complaint against the PCH Defendants in the United States District Court for the Eastern District of Pennsylvania. *See* R. 1-2, Compl. Exh. 2, Underlying Compl. The complaint included claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, *et seq.*, as well as common law fraud, negligent misrepresentation, unjust enrichment, civil conspiracy, tortious interference, and equitable accounting. *See generally, id.*

In that underlying complaint, Aetna alleged that the PCH Defendants created "an extensive health care billing fraud scheme through which they bilked Aetna, employers that sponsor health plans, and Aetna members out of more than $21 million." Underlying Compl. ¶ 1. Aetna's theory is that the PCH Defendants caused Aetna to overpay for laboratory tests and services at hospitals that PCH managed.

2

*Id.* ¶ 2. PCH allegedly did this by taking advantage of the hospitals' agreements with Aetna, under which Aetna had agreed to pay higher-than-usual prices for laboratory services conducted *at the hospital*. *Id.* But instead of having the hospitals conduct the tests (as required for the higher prices Aetna had agreed to), PCH had the tests performed at out-of-network laboratories that would usually have commanded a lower rate from Aetna. *Id.* PCH then billed Aetna at the higher rate without disclosing the fact that the tests had been outsourced. *Id.*

But, Aetna is not the only entity that has sued PCH for damages incurred as a result of the alleged scheme. One of the hospitals that PCH managed, and which was implicated in the scheme Aetna alleges, was Newman Memorial Hospital. Underlying Compl. ¶ 2. Before Aetna filed its lawsuit, Newman Memorial Hospital had also sued the very same set of defendants, "relating to the same alleged fraudulent billing scheme." Compl. ¶¶ 3, 37-47 ("Newman claimed, among other things, that the defendants submitted claims to private payors, including Aetna, under Newman's national provider identifier number for laboratory tests in violation of Newman's provider agreements with payors."); *see generally also* R. 1-3, Compl. Exh. 3, Second Am. Pet. in Newman Lawsuit. The Newman lawsuit was first filed on June 30, 2017. Compl. ¶ 37. The Second Amended petition in that case was served on PCH on August 7, 2017. *Id.* ¶ 38. Aetna specifically mentioned the Newman lawsuit in the underlying complaint in its own case against PCH. Underlying Compl. ¶¶ 141-143 (explaining

that "Newman recently filed suit against many of the Defendants" and describing many of the allegations in the Newman lawsuit).

## B. The Insurance Policy

PCH purchased the Arch policy at issue here for the policy period of September 11, 2017 to September 11, 2018. Compl. ¶ 21; R. 1-1, Compl. Exh. 1, Policy at 1. The Policy does not cover "claims arising from, based upon, or attributable to the same wrongful act" as claims that were first made before the policy period began. *See* Policy at 13.[3] Also, the policy contains an explicit exclusion of any claim "arising from, based upon, or attributable to any ... Wrongful Act specified in [a] prior demand, suit or proceeding or any Interrelated Wrongful Acts thereof." Policy at 30, 41.

Among other exclusions, the Policy also bars coverage for claims resulting from "healthcare services." Endorsement 16 to the Policy states: "The Insurer shall not pay Loss for any Claim against an Insured arising from, based upon, or attributable to any Healthcare Services." Policy at 86. "Healthcare services," is defined as "all healthcare and related services, including, without limitation, any ... (b) laboratory, imagining and diagnostic services; (c) billing for services rendered or products provided; or (d) advice given in connection with any of the above." *Id*.

---

[3]R. 1-1 includes the Policy and all its constituent exhibits and amendments. This Opinion uses the PDF file page numbers to point to the relevant pages even though most of the exhibits have their own pagination.

4

## II. Legal Standard

### A. Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes*, 670 F.3d at 813. In deciding a motion for judgment on the pleadings, the Court must accept all well-pled allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper "if it appears beyond doubt that the [non-moving party] cannot prove any set of facts" sufficient to support his claim for relief. *Id.* (cleaned up).[4] The Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

In evaluating an insurance-coverage dispute, the Court must "look to the allegations of the underlying complaint[]" to determine whether it "allege[s] facts within or *potentially* within policy coverage." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original). The insurer is liable to pay whenever the allegations in the complaint match the policy's coverage: "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint[] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Id.*

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

Both the insurance policy and the underlying complaint "must be liberally construed in favor of the insured," and "all doubts and ambiguities must be resolved in favor of the insured." *Id.*

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

The Court will evaluate each motion in turn, beginning with the cross-motions for judgment on the pleadings.

### A. Arch's Motion for Judgment on the Pleadings

Arch's motion for judgment on the pleadings includes various arguments on several of the counts brought in Arch's declaratory judgment complaint. *See* Pl.'s Mot. J. Pleadings. Because Arch is the clear winner on Counts 1, 4, and 5, as well as Counterclaim 1, as explained below, the Court need not evaluate Arch's arguments on Count 6. *See id.* at 14-15.

### 1. Counts 1 and 4

Arch's primary argument in this case is that the Aetna lawsuit and the Newman lawsuit arise from the same claim, and that claim arose *before* the coverage period began. Count 1 of Arch's complaint asserts this argument, namely, that the Policy only covers claims that first arose during the policy period. Compl. ¶¶ 52-58. Because the Second Amended Petition in the Newman Lawsuit was served on the PCH Defendants on August 7, 2017, Arch argues that it and any other claims based on the same acts—including the Aetna lawsuit—arose before the policy period and simply were not covered under the Policy. *Id.* (quoting Policy at 13 ("[A]ll Claims arising from, based upon, or attributable to the same Wrongful Act or Interrelated

Wrongful Acts shall be deemed a single Claim first made on the earliest date that … any of such Claims was made.") (emphasis omitted)).

Count 4 of the complaint is slightly different: it is based on an explicit provision in the Policy that excludes claims arising from pending and prior litigation. *Id*. ¶¶ 74-78. The analysis is the same as under Count 1 for all practical purposes, however, in that the exclusion bars coverage of any claim "arising from, based upon, or attributable to any … Wrongful Act specified in [a] prior demand, suit or proceeding or any Interrelated Wrongful Acts thereof." *Id*. ¶ 75 (quoting Policy at 30, 41).

Arch's motion for judgment on the pleadings echoes those arguments. Pl.'s Mot. J. Pleadings at 7-12. In response to Counts 1 and 4, PCH does *not* argue that the two lawsuits did not arise from the same interrelated or wrongful acts. *See* R. 56, Def.'s Resp. and Cross-Mot. at 8-11; *see also* R. 57, Pl.'s Reply and Resp. at 4 (noting PCH's silence on that point). Instead, PCH asserts an affirmative defense: Arch allegedly has waived the policy provisions undergirding Counts 1 and 4. Def.'s Resp. and Cross-Mot. at 8-11; *see also* R. 47, Def.'s Am. Answer at 41-42 (setting out PCH's sixth affirmative defense of waiver). PCH's theory is that because Arch did not uncover the Newman lawsuit in its underwriting process before selling the Policy to PCH, Arch waived its right to enforce policy provisions denying coverage to claims related to the Newman lawsuit. Def.'s Resp. and Cross-Mot. at 9-10.

In response, Arch correctly points out that contract provisions cannot be waived before a contract is in force. Pl.'s Reply and Resp. at 5-6 (citing *Cent. Contracting, Inc. v. Kenny Constr. Co.*, 2012 WL 832842, at *4 (N.D. Ill. March 12,

2012) ("[D]iscovery regarding pre-contract communications and intent is irrelevant to waiver.")); *see also C-B Realty and Trading Corp. v. Chi. and N. W. Ry. Co.*, 682 N.E.2d 1136, 1142 (Ill. App. Ct. 1997) ("This court has found that a party can waive a contract provision by failing to object to its breach."); *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1343 (7th Cir. 1983) ("A party to the contract may waive a condition precedent to performance on his part or a breach of contract provisions by conduct manifesting a continued recognition of the contract's existence after learning of the breach thereof."). And more broadly, it is worth noting that Arch's alleged failure to ask any questions about pending lawsuits is not necessarily in conflict with the Policy's exclusion of claims for prior or already-pending litigation. In fact, it is perfectly sensible that a potential insurer would not worry about documenting claims that would clearly fall outside the scope of its coverage.

Part of PCH's waiver theory is that Arch engaged in "post-loss" or "post-claim" underwriting, or "waiting until a claim has been filed to obtain information and make underwriting decisions which should have been made when the application was made, not after the policy was issued." Def.'s Resp. and Cross-Mot. at 10-11 (quoting *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So.2d 183, 186 (Miss. 1994)). But as Arch points out, post-claim underwriting is not prohibited in Illinois. Pl.'s Reply and Resp. at 6-7 (quoting *Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 846-47 (Ill. App. Ct. 1998) ("Illinois law imposes no duty on an insurer to conduct an independent investigation of insurability before issuing an insurance policy.")); *see also Commercial Life Ins. Co. v. Lone Star Life Ins. Co.*, 727 F. Supp. 467, 471 (N.D. Ill. 1989) ("An insurance

9

company has the right to rely on the truthfulness of the answers given by an insurance applicant."); *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir. 1971) ("An insurance company need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application at least if there is nothing to put it on notice that certain answers may be false."). And in any case, it is hard to see why this coverage decision by Arch is one that "should have been made when the application was made." *Lewis*, 637 So.2d at 186. As explained above, the Policy clearly excludes claims made before the coverage period began, so there is no reason to think that knowing about the Newman lawsuit would have changed Arch's decision to issue the Policy. Even an Arch underwriter who knew about the Newman lawsuit could reasonably have assumed it would not be covered under any policy that was eventually issued.

In the course of briefing, PCH also touched upon another defense to Counts 1 and 4: the "eight-corners rule." R. 63, Def.'s Reply at 9-13. The eight-corners rule requires a court adjudicating coverage disputes to "compare [only] the four corners of the underlying complaint with the four corners of the insurance contract and determine whether the facts alleged in the underlying complaint fall within, or potentially within, the insurance policy's coverage." *Farmers Auto. Ins. Ass'n v. Country Mut. Ins. Co.*, 722 N.E.2d 1228, 1232 (Ill. App. Ct. 2000). PCH's argument here is that the underlying complaint does not discuss the Newman lawsuit—or at least that it does not provide *enough* information about the Newman lawsuit—so the Court cannot take the Newman lawsuit into account in determining Arch's potential

liability. *See* Def.'s Reply at 11-13; R. 71, Def.'s Rebutter at 2-4. As Arch points out, however, Illinois courts only apply the eight-corners rule to bar evidence that "tend[s] to determine an ultimate issue in the underlying proceeding." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 825 (7th Cir. 2016) (cleaned up) (citing *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1020-21 (Ill. 2010)); R 70, Pl.'s Sur-Reply at 4-5.

To be clear, the Newman lawsuit *is* mentioned in the underlying complaint. Underlying Compl. ¶¶ 141-143 (explaining that "Newman recently filed suit against many of the Defendants" and describing many of the allegations in the Newman lawsuit). PCH's response to that fact is that the underlying complaint does not contain *enough* information on the underlying lawsuit. Def.'s Rebutter at 2-3. PCH would prefer that technical information on the Newman lawsuit be included—information on where and when the case was filed, or a case number, such that a party reading the complaint would have "sufficient information to locate and defend the suit." *See id*. PCH argues that that type of information is necessary because it is the information that would be required to give an insurance company "actual notice" of a lawsuit. *Id*. at 2 (quoting *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 505 (Ill. 1998)). But it fails to explain why that standard would be applicable here, where no party involved is being asked to locate or defend the Newman lawsuit.

In any case, by PCH's own account, the only information about the Newman lawsuit that the Court needs to determine liability here are two things: (1) whether the lawsuit began before the Policy period; and (2) whether it is "interrelated to the claim or suit submitted for coverage." Def.'s Rebutter at 2. On the second point, PCH

11

has never argued that the two claims are *not* interrelated, so this Court need not even undertake that inquiry. On the first, the date that the Newman lawsuit began is simply not an ultimate issue in the *Aetna* lawsuit—and PCH does not argue that it is—even assuming that there is not enough information in the underlying complaint to determine it.[5] So the eight-corners rule does not apply here. The Court grants judgment to Arch on Counts 1 and 4.

## 2. Count 5

Arch also moves for judgment on Count 5, which alleges that the healthcare services exclusion in the Policy bars coverage. Endorsement 16 to the Policy states: "The Insurer shall not pay Loss for any Claim against an Insured arising from, based upon, or attributable to any Healthcare Services." Policy at 86. "Healthcare services," in turn, is defined as "all healthcare and related services, including, without limitation, any … (b) laboratory, imagining and diagnostic services; (c) billing for services rendered or products provided; or (d) advice given in connection with any of the above." *Id*. Arch argues that the Aetna lawsuit arises out of "laboratory services, billing for laboratory services, and advice given in connection with these services." Pl.'s Mot. J. Pleadings at 13-14. PCH does not really argue that the Aetna lawsuit is outside the plain text of the healthcare services exclusion. Def.'s Resp. and Cross-

---

[5]Of course, in the context of a motion for judgment on the pleadings, the Court is limited to analysis of the pleadings in the case. *See Pekin*, 930 N.E.2d at 1021-21 (pointing out this caveat in the state-court declaratory judgment context). But the Second Amended Petition in the Newman lawsuit, stamped as filed on August 7, 2017—before the coverage period began—is attached to the pleadings themselves. Second Am. Pet. in Newman Lawsuit at 1. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452.

Mot. at 11-12. Instead, PCH argues that interpreting the provisions to cover the Aetna lawsuit "would render coverage under the Policy illusory." *Id.* (citing *Aetna Cas. and Sur. Co. v. O'Rourke Bros., Inc.*, 776 N.E.2d 588, 593 (Ill. App. Ct. 2002); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 79 (1997)).

An illusory promise is one that "appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *W.E. Erickson Const., Inc. v. Chi. Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. Ct. 1994). A policy is not illusory simply because it does not provide coverage against some category of injuries: "The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Nicor, Inc. v. Assoc. Elec. & Gas. Ins. Ltd.*, 841 N.E.2d 78, 86 (Ill. 2005).

Here, Arch argues that even reading the healthcare services exclusion broadly, there are many conceivable circumstances under which the Policy would still provide coverage. For example, Arch alleges that there would be coverage "if an insured is alleged to have breached its fiduciary duty to the company." Pl.'s Reply and Resp. at 8. PCH does not argue—despite voluminous briefing—that such a scenario would *not* be covered. And that makes sense. Even a physician—whose profession may in many ways revolve around healthcare services—could breach her fiduciary duty to a hospital company without actually performing any healthcare services at all. The most sensible explanation for the exclusion is that the Policy is a narrow one—it simply does not cover the many possible liabilities that could arise from PCH's healthcare services. The contract language must control.

PCH makes two additional shaky arguments. First, it argues that cases evaluating illusoriness of *professional services* exclusions cannot be considered here. *See* Def.'s Reply at 13 ("While Arch makes a fine theoretical argument about *professional services*, Arch has nothing to say in the face of the assertion that the *Healthcare Services* Exclusion renders coverage illusory to these *healthcare services* defendants.") (emphasis in original) (citing Pl.'s Reply and Resp. at 9). But Arch does not attempt to "shift the Policy language discussion" away from the healthcare services exclusion, as PCH claims it does. *See* Def.'s Reply at 13. It simply analogizes the healthcare services exclusion in this Policy to professional services exclusions in other policies—a reasonable thing to do. *See* Pl.'s Reply and Resp. at 8-9 (citing *Neighborhood Housing Serv. of Am., Inc. v. Turner-Ridley*, 742 F. Supp. 2d 964, 973 (N.D. Ind. 2010) ("As such, while the professional services exclusion excludes some D&O coverage, it does not exclude all D&O coverage.")).

PCH is also wrong in its assertion that Arch "attempts to shift the discussion away from D&O policies, such as the one at bar, to E&O policies." Def.'s Reply at 13-14. In reality, Arch seems to be attempting to do the opposite and *keep* the focus on D&O policies. *See* Pl.'s Reply and Resp. at 8-9 ("Importantly, the Policy is a D&O policy and provides D&O coverage. It is not an E&O policy."). Arch mentions PCH's E&O coverage in a single footnote in its briefing, in an attempt to differentiate a related dispute about PCH's E&O coverage. *See* Pl.'s Reply and Resp. at 9 n.5. PCH's argument that Arch is attempting to shift attention *away* from the D&O coverage at

issue here is a mischaracterization of Arch's brief argument attempting to ensure that the focus *stays* on D&O coverage.

### 3. Counterclaim 1

Arch's motion also seeks summary judgment against PCH's Counterclaim 1, which alleges that Arch's refusal to cover the Aetna lawsuit amounts to a breach of contract. Pl.'s Mot. J. Pleadings at 2, 7; Am. Counterclaim ¶¶ 1-15. Arch argues that its refusal to cover the Aetna lawsuit and its filing of this declaratory judgment action cannot amount to a breach of contract, because "the duty to defend is suspended upon [the insurer's] filing for a declaratory judgment that there is no coverage." Arch Reply and Resp. at 19 (quoting *Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency, Inc.*, 848 N.E.2d 597, 601 (Ill. App. Ct. 2006)) (cleaned up). PCH does not allege that Arch breached the insurance contract in any way except in its refusal to cover the Aetna lawsuit thus far. *See* Am. Counterclaim ¶¶ 1-15. So on the pleadings, there has been no conduct by Arch that could amount to a breach of contract.

### B. PCH's Motion for Judgment on the Pleadings

Because Arch prevails on the issue of coverage, there is no need to discuss PCH's motion for judgment on the pleadings as it relates to Arch's declaratory judgment claims. PCH's motion must also be denied on PCH's Counterclaim 1 for the reasons explained above: First, and fundamentally, Arch is not liable for coverage of the Aetna lawsuit. And second, to the extent PCH intended to allege an actual breach of contract—and not just a claim for declaratory judgment on the issue of coverage—Arch's duty to defend was suspended when it filed the declaratory judgment suit.

15

## C. Arch's Motion to Dismiss

PCH's Counterclaim 2 seeks damages under 215 ILCS 5/155 for "vexatious and unreasonable" conduct by Arch. Am. Counterclaim at ¶¶ 16-20. Arch moves to dismiss it, arguing that PCH alleges no facts to suggest that Arch's conduct was in any way improper. Mot. Dismiss at 3-6. A claim under § 155 requires more than a simple denial of coverage, especially where the denial of coverage is reasonable or there is at least a *bona fide* dispute about it. *See Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003); *Clayton v. Millers First Ins. Cos.*, 892 N.E.2d 613, 620 (Ill. App. Ct. 2008). PCH's argument in response simply points back to the allegations in Counterclaim 2 and asserts that "Arch has failed and refused to pay the claim or to provide a reasonable and accurate explanation of the basis in the Policy or applicable law for such failure and refusal to pay the amount due." Def.'s Resp. and Cross-Mot. at 15. There are no other allegations in the Counterclaim, let alone specific facts about any egregious conduct by Arch. That is not enough to plead a claim under § 155, especially in a case like this one, where there are several *bona fide* disputes about coverage and the plaintiff filed a declaratory judgment action setting out those disputes. Plus, as described above, several of Arch's arguments are winning ones. Counterclaim 2 must be dismissed.

## IV. Conclusion

For the reasons provided above, Arch's motion for judgment on the pleadings, R. 34, is granted as to Counts 1, 4, and 5 of the complaint, as well as Counterclaim 1. Arch's motion to dismiss Counterclaim 2, R. 35, is also granted. PCH's cross-motion for judgment on the pleadings, R. 56, is denied. A declaratory judgment will be

entered for Arch: there is no duty to defend the PCH Defendants against Case No. 17 C 4354, filed in the Eastern District of Pennsylvania. The status hearing of August 22, 2019 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 5, 2019